## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELVIN PHILLIPS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-17496** |
| **DARREL VANNOY, WARDEN** | **SECTION "J"(4)** |

## REPORT AND RECOMMENDATION

The petitioner, Melvin Phillips ("Phillips"), filed a petition for federal habeas corpus relief under 28 U.S.C. § 2254 that was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. On August 2, 2018, the undersigned Magistrate Judge issued a Report and Recommendation recommending dismissal of Phillips's petition for failure to exhaust state court remedies as to his challenge to a jury charge used in his state court criminal trial unless Phillips dismissed, or amended the petition to exclude, the unexhausted claim.[1] After review of Phillips's objections and motion to amend, the District Judge granted the amendment to exclude the unexhausted claim and referred the matter back to the undersigned magistrate judge for issuance of a report and recommendation on the remaining claims.[2]

Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[3]

---

[1]Rec. Doc. No. 10.

[2]Rec. Doc. Nos. 11, 12, 13.

[3]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

I.    **Factual and Procedural Background**

On October 31, 2011, Phillips was charged in Jefferson Parish by Bill of Information, as amended, with one count of armed robbery and one count of attempted armed robbery.[4]  The record reflects that, at approximately 1:00 a.m. on September 3, 2011, Carlos Sosa was working at the Shell gas station on West Esplanade and Williams Boulevard when a man, later identified as Phillips, walked in and demanded money.[5]  Upon demanding the money, Phillips raised his t-shirt and displayed the handle of a gun secured in his belt.  Phillips kept his hand on the gun handle for the duration of the robbery.

Sosa complied with the Phillip's demands and gave him the money from the register. Unsatisfied, Phillips ordered Sosa to open the store's safe and lift the drawer out of the register to disclose any additional money.  Sosa told Phillips that he could not open the safe and that there was no more money underneath the register drawer.  Phillips took the money he had been given and before leaving, instructed Sosa to stay inside.  When Phillips left, Sosa called the police and explained that Phillips was wearing an army hat, fatigue jacket, white t-shirt, shorts, and tennis shoes.  The robbery was captured on the store's surveillance cameras.  A few days later, Sosa identified Phillips from a photographic lineup.

That same night, at approximately 4:45 a.m., Kenneth Klein was working at the Exxon station located at the corner of David Drive and Airline Highway when a man, later identified as Phillips, wearing a white t-shirt and camouflage pants entered the store, took out his wallet, and

---

[4]St. Rec. Vol. 1 of 7, Bill of Information, 10/31/11 (as amended 6/26/12).

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Phillips*, 130 So.3d 416, 418-20 (La. App. 5th Cir. 2013); St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 13-KA-154, pp. 3-6, 12/12/13.

asked for a pack of cigarettes.  When Klein retrieved the cigarettes, Phillips said, "I'll take the Kools and everything in the register, or I'll blow your f***ing head off."  Phillips lifted his shirt to reveal a gun tucked in his waistband, and he placed his hand on the gun.  Klein could see the handle grip, the trigger guard, the hammer, and a portion of the barrel.

Klein complied with Phillips's demand and placed the money from the cash register on the counter.  Phillips demanded the money that was under the drawer of the register, but Klein said there was none.  Phillips then stated, "Don't look at me or I'll blow your f***ing head off."  Klein was scared and concerned that Phillips would follow through with his threats.  When Phillips took his hand off the gun to reach for the money, Klein took out his own pistol and shot Phillips twice.  After the first shot, Klein thought Phillips was trying to reach for the gun at his waist, so he fired the second shot.

Phillips ran from the store and Klein followed him outside to get his license plate number.  When he got outside, Klein thought Phillips was getting back out of his car to start shooting at him.  Klein then fired one more shot into the car door in an attempt to keep Phillips in the car, and to mark the car so it could be identified.  Phillips drove away, and Klein called the police.

Upon their arrival, the police discovered that Phillips left his wallet, including his social security card, driver's license, and other identifying items, on the counter of Klein's store.  After being shot, Phillips soon was involved in a one-car accident and was taken to the hospital for treatment of his gunshot wounds.  The police retrieved from the car a BB handgun, Phillips's Visa credit card, cell phone, a hat, and camouflage shorts.

Phillips was tried before a jury on June 26 and 27, 2012, and was found guilty as charged.[6] On July 19, 2012, the Trial Court denied Phillips's motion for a new trial and, after waiver of legal delays, sentenced him to consecutive prison terms of 50 years for armed robbery and 24 years for attempted armed robbery.[7]

The State also filed a multiple bill charging Phillips as a second felony offender.[8] Following a hearing on the multiple bill that same day, the Trial Court vacated the original sentences and resentenced Phillips as a second offender to serve 75 years in prison for armed robbery and 50 years in prison for attempted armed robbery to run concurrently and without benefit of parole, probation, or suspension of sentence.[9]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Phillips's appointed counsel asserted three errors:[10] (1) the Trial Court erred by reading a jury instruction which stated that a toy gun could be a dangerous weapon in the armed robbery of Sosa, and the evidence was only sufficient to establish a first degree robbery of Sosa; (2) the Trial Court erred by imposing an unconstitutionally excessive sentence; and (3) trial counsel erred by failing to file a motion to reconsider the sentence if that failure precludes review of the excessive sentence.  In his *pro se*

---

[6]St. Rec. Vol. 1 of 7, Trial Minutes, 6/26/12; Trial Minutes, 6/27/12; Jury Verdict, 6/27/12; St. Rec. Vol. 4 of 7, Trial Transcript, 6/26/12; St. Rec. Vol. 5 of 7, Trial Transcript (continued), 6/26/12; St. Rec. Vol. 6 of 7, Trial Transcript (continued), 6/26/12; Trial Transcript, 6/27/12.

[7]St. Rec. Vol. 1 of 7, Sentencing Minutes, 7/19/12; Motion for New Trial, 7/19/12; St. Rec. Vol. 6 of 7, Sentencing Transcript, pp. 15, 28, 7/19/12.

[8]St. Rec. Vol. 1 of 7, Sentencing Minutes, 7/19/12; Multiple Bill, 7/19/12; St. Rec. Vol. 6 of 7, Sentencing Transcript, p. 30, 7/19/12.

[9]St. Rec. Vol. 1 of 7, Sentencing Minutes, 7/19/12; St. Rec. Vol. 6 of 7, Sentencing Transcript, p. 30, 7/19/12.

[10]St. Rec. Vol. 6 of 7, Appeal Brief, 13-KA-154, 3/28/13.

supplemental brief, Phillips asserted the following errors:[11] (1) the Trial Court erred in adjudicating him as a second offender when the State failed to meet its burden of proof on the multiple bill; and (2) trial counsel failed to object or move to quash the multiple bill.

On December 12, 2013, the Louisiana Fifth Circuit affirmed Phillips's convictions finding no merit in his first counseled claim.[12]  However, based on his claim of ineffective assistance of counsel for failing to challenge the multiple bill proceedings, and finding concerns with the evidence relied on by the State, the Court vacated the multiple offender adjudication and sentences without prejudice to the State's ability to retry Phillips as a multiple offender on remand.  As a result, the Court went on to find no need to address the excessive sentence and related ineffective assistance claim.  On February 5, 2014, the Court also refused Phillips's *pro se* request for rehearing based on further argument related to the constitutionality of the predicate offense in the multiple bill.[13]

On September 26, 2014, the Louisiana Supreme Court summarily denied Phillips's related writ application in which he asserted that the Louisiana Fifth Circuit erred in finding the evidence sufficient to support the armed robbery conviction.[14]

Following the remand by the Louisiana Fifth Circuit, on February 3, 2015, the Trial Court resentenced Phillips to serve consecutive terms of 50 years for armed robbery and 24 years for

---

[11]St. Rec. Vol. 1 of 7, Pro Se Supplemental Brief, 13-KA-154, 5/17/13.

[12]*Phillips*, 130 So.3d at 416; St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 13-KA-154, 12/12/13.

[13]St. Rec. Vol. 6 of 7, 5th Cir. Notice, 13-KA-154, 2/5/14; Pro Se Application for Rehearing, 13-KA-154, 12/30/13.

[14]*State ex rel. Phillips*, 149 So.3d 257 (La. 2014); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2014-KH-0147, 9/26/14; La. S. Ct. Writ Application, 14-KH-147, 1/21/14 (dated 1/10/14).

attempted armed robbery.[15]  On March 11, 2015, Phillips pleaded guilty to the State's multiple bill.[16]  The Trial Court vacated the sentences and resentenced him as a second offender to consecutive sentences of 75 years for armed robbery and 50 years for attempted armed robbery to be without benefit of parole, probation, or suspension of sentence.

Phillips sought no review of the new multiple offender adjudication or sentence.  His convictions and sentences became final thirty (30) days later, on April 10, 2015, when he did not move for leave to appeal or seek reconsideration of the new sentences.  La. Code Crim. P. art. 914;[17] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)); *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)); *Scott v. Hubert*, 635 F.3d 659, 665 (5th Cir. 2011) (same, citing *Burton*, 549 U.S. at 156).

Eleven months later, on March 8, 2016, Phillips signed and submitted an application for post-conviction relief to the Trial Court in which he asserted that he received ineffective assistance of counsel when counsel advised him to reject a plea offer of a 20-year sentence and failed to argue

---

[15]St. Rec. Vol. 1 of 7, Sentencing Minutes, 2/3/15.

[16]St. Rec. Vol. 1 of 7, Sentencing Minutes, 3/11/15; Multiple Bill, 3/10/15; Waiver of Rights - Plea of Guilty Multiple Offender, 3/11/15.

[17]Louisiana law requires a criminal defendant to move for leave to appeal within thirty (30) days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence. La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1).  Failure to move timely for appeal under Art. 914 rendered the conviction and sentence final at the expiration of that period.  *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

the only legitimate defense.[18]  On May 13, 2016, after receiving additional briefing, the Trial Court

denied relief finding no merit to the claims under the standards in *Strickland v. Washington*, 466

U.S. 668 (1984) and related case law.[19]

On July 13, 2016, the Louisiana Fifth Circuit denied Phillips's related writ application

finding no error in the Trial Court's ruling.[20]  On December 5, 2017, the Louisiana Supreme Court

denied Phillips's subsequent writ application holding that he failed to show ineffective assistance

of counsel under *Strickland*.[21]

## II.   Federal Petition

On December 18, 2017, the clerk of this Court filed Phillips's federal petition for habeas

corpus relief in which he asserts the following grounds for relief:[22] (1) insufficient evidence to

convict and improper jury instruction; and (2) ineffective assistance of counsel when his trial

attorney advised him to reject a plea offer of a 20-year sentence and failed to argue the only

legitimate defense to the jury.  Phillips has since amended his petition to exclude the unexhausted

claim of an improper jury instruction.  Exhaustion was the only procedural defense asserted in the

State's response in opposition to Phillips's federal habeas petition.[23]

---

[18]St. Rec. Vol. 1 of 7, Application for Post-Conviction Relief, 3/14/16 (dated 3/8/16).

[19]St. Rec. Vol. 2 of 7, Trial Court Order, 5/13/16; Memorandum in Support, 3/29/16; Trial Court Order, 4/6/16; State's Response, 4/21/16; *see also*, Traverse, 5/25/16; Trial Court Order, 6/1/16.

[20]St. Rec. Vol. 2 of 7, 5th Cir. Order, 16-KH-353, 7/13/16; St. Rec. Vol. 7 of 7, 5th Cir. Writ Application, 16-KH-353, 6/20/16 (dated 6/10/16).

[21]*State ex rel. Phillips v. State*, 231 So.3d 32 (La. 2017); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2016-KH-1549, 12/5/17; La. S. Ct. Writ Application, 16-KH-1549, 8/12/16 (dated 7/26/16).

[22]Rec. Doc. No. 1.

[23]Rec. Doc. No. 9.

### III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to this petition, which is deemed filed in this Court no later than December 18, 2017.[25]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes, and the record proves, that Phillips's federal petition was timely filed. The Court has already addressed Phillips's failure to exhaust state court review and no other procedural defenses are reflected in the record.   The Court will review Phillips's remaining claims.

### IV.   Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).   It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

---

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.   *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).   The AEDPA was signed into law on that date and does not specify an effective date for its non-capital habeas corpus amendments.   Absent legislative intent to the contrary, statutes become effective when signed into law.   *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.   Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).   The clerk of court filed Phillips's petition when it was received on December 18, 2018.   The official stamp of the prison legal department reflects that Phillips's delivered his pleadings for electronic mailing to the court on December 18, 2017.   The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his *pro se* petition.   *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*,

9

210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id*.  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Analysis

### A.    Sufficiency of the Evidence (Claim No. 1)

Phillips alleges that the state failed to prove that his B.B. gun was a dangerous weapon to prove the armed robbery.  Phillips's counsel asserted this claim on direct appeal.  Citing *Jackson*

*v. Virginia*, 443 U.S. 307 (1979), and related state case law, the Louisiana Fifth Circuit denied relief finding that, under Louisiana law, the B.B. gun satisfied the dangerous weapon element of the armed robbery committed against Sosa.[26]  This was the last reasoned opinion on the issue.  *See Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning."); *see also*, *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion.)

Claims of insufficient evidence present a mixed question of law and fact.  *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state court's findings unless the decision was contrary to or involved an unreasonable application of Supreme Court law.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 F. App'x 817, 821 (5th

---

[26]Phillips limited his issue to proof of the "armed robbery."  He was charged with the armed robbery of Sosa, and the state courts limited the discussion to that conviction.  The charge as to Klein was attempted armed robbery. Nevertheless, the analysis would be the same as to both counts.

Cir. 2011).  Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.[27]

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under Jackson ); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial.").  The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.")  A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d

---

[27]Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. Ann. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review.  *See Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).  To the extent Phillips relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test ... .  Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); accord *State v. Williams*, 693 So. 2d 204, 209 (La. App. 4th Cir. 1997).  The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails."  *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); accord *Williams*, 693 So. 2d at 209.  The appropriate standard for this Court on habeas review remains *Jackson*.

595, 598 (5th Cir. 1985)).  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission of a crime is adequately supported by the record, a court must review the substantive elements of the crime as defined by state law.  *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

In Louisiana, armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. Ann. § 14:64.  Armed robbery is a general intent crime in Louisiana.  *State v. Smith*, 23 So.3d 291, 297 (La. 2009).  "General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. Rev. Stat. Ann. § 14:10(2).  In Louisiana, general intent "is shown by the very doing of the acts which have been declared criminal." (citation omitted) *State v. Oliphant*, 113 So.3d 165, 172 (La. 2013).  Intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)).

Louisiana law defines a dangerous weapon as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily

13

harm." La. Rev. Stat. Ann. § 14:2(3). Louisiana law recognizes that a gun is a dangerous weapon. La. Rev. Stat. Ann. § 14:64(A); *State v. Thomas*, 13 So.3d 603, 606 (La. App. 5th Cir. 2009). Even an unworkable weapon can suffice for an armed robbery conviction under the proper circumstances. *State v. Levi*, 259 La. 591, 250 So.2d 751 (1971); *State v. Lewis*, 892 So.2d 702 (La. App. 2d Cir. 2005). Similarly, the Louisiana courts have repeatedly held that a B.B. or toy gun can be considered a dangerous weapon if the jury determines the interaction between the offender and the victim created a highly charged atmosphere whereby there was danger of serious bodily harm resulting from the victim's fear for his life. *State v. Chisholm*, 139 So.3d 1091, 1099 (La. App. 2d Cir. 2014) (toy pellet gun found sufficient in the manner used to support armed robbery conviction); *Lewis*, 892 So.2d at 702 (B.B. gun is a dangerous weapon as used); *State v. Woods*, 713 So.2d 1231 (La. App. 1st Cir. 1998), *writ denied*, 741 So.2d 1281 (La. 1999) (toy B.B. gun was a weapon as used); *see also State v. Green*, 409 So.2d 563 (La. 1982) (toy cap pistol as used was a dangerous weapon); *State v. Williams*, 827 So.2d 1286 (La. App. 2d Cir. 2002), *writ denied*, 853 So.2d 633 (La. 2003) (pellet gun is a dangerous weapon). The "dangerous weapon" determination presents a question of fact for the jury. *State v. McClure*, 793 So.2d 454 (La. App. 2d Cir. 2001); *State v. Hopkins*, 692 So.2d 538 (La. App. 3d Cir. 1997); *see also Gipson v. Warden, La. St. Pen.*, No. 06-1809, 2009 WL 3333144, at *10 (W.D. La. Oct. 15, 2009) ("whether an object is a dangerous weapon is a factual issue to be determined in the context of how the gun was used in the robbery").

In this case, the Louisiana Fifth Circuit determined that the jury reasonably found under the circumstances that the B.B. gun used by Phillips during the commission of the crime satisfied the "dangerous weapon" element. This Court must give deference to the appellate court's, and the jury's, determination of evidentiary credibility, and justifiable inferences of fact. *Cittadino v.*

*Cain*, No. 98-0774, 1999 WL 350072, at *4 (E.D. La. May 27, 1999) (denying habeas relief on insufficient evidence claim petitioner used a toy gun in the armed robbery).

In this case, there was ample evidence for the jury to conclude that Phillips committed an armed robbery with a dangerous weapon. The evidence established that Phillips took the money from Sosa by use of force or intimidation in a highly charge atmosphere. Sosa testified at trial that Phillips walked into the store and asked for money.[28] He then lifted his shirt to show the gun tucked into his belt. Sosa saw the handle of the gun and recalled that Phillips kept his hand on the gun after that.[29] When Sosa saw the gun, he took it seriously and put the money from the register on the counter in front of Phillips.[30] When Phillips asked for more money, Sosa showed him there was no money under the drawer and told him he could not open the safe. Sosa testified that he was nervous and did not "play around" because of the gun.[31]

The jury, therefore, heard testimony that Phillips demanded money from Sosa and showed him the weapon as a threat or intimidation to give him the money. Sosa indicated that he took Phillips's action seriously and was nervous because of the gun and the way Phillips kept his hand on the gun. The jury also viewed the surveillance video recording of the incident as it took place and was able to evaluate the "highly charged atmosphere" during the robbery.

The actions and emotions during the Sosa robbery are consistent with similar cases in Louisiana, cited above, in which the circumstances and victim fear were sufficient to render a toy B.B. gun to be a dangerous weapon. Under the circumstances, the jury was reasonable in finding

---

[28]St. Rec. Vol. 6 of 7, Trial Transcript (continued), p. 398, 6/26/12.

[29]*Id*. at pp. 398, 401.

[30]*Id*. at pp. 398, 402.

[31]*Id*. at pp. 398, 401.

the B.B. gun to be a dangerous weapon and that Phillips took the money from Sosa by use of force or intimidation while armed with a dangerous weapon.

The denial of relief on this issue was neither contrary to nor an unreasonable application of *Jackson*. Phillips is not entitled to relief on this issue.

### B.      Effective Assistance of Counsel (Claim No. 2)

Phillips alleges that his trial counsel provided ineffective assistance when he advised him to reject a plea agreement that included a 20-year sentence. He also claims that counsel was ineffective when he failed to argue the only legitimate defense to the jury, i.e. first-degree robbery and attempted first-degree robbery, as opposed to simple robbery and attempted simple robbery. Phillips also suggests that his trial counsel may have been a district attorney in Orleans Parish, and he would not have hired him had he known this.

Phillips asserted these arguments on post-conviction review. As mentioned above, the state courts denied relief on these claims under the standards set forth in *Strickland*.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must consider the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Id.*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*,

17

566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).   In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at 112.  In determining whether prejudice resulted, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105.  The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."  *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting

*Knowles*, 556 U.S. at 121 n.2).  This Court must also apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000).  Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The denial of effective assistance of counsel under *Strickland* is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).  The question before this court is whether the state courts' denial of relief on these claims was contrary to or an unreasonable application of United States Supreme Court precedent.

### 1.  Plea Offer

Phillips claims that his counsel advised him to reject a plea offer that would have given him only a 20-year sentence.  He does not indicate any other details about the alleged plea offer, including the alleged charge(s) to which he would be pleading.  In addition, the state court record contains no indication that a plea offer was made by the State, and Phillips has provided no support for his suggestion that an offer was presented to defense counsel or by defense counsel.

Nevertheless, Phillips's unsupported assertion is that his counsel advised him to reject the offer, because he was certain that the State could not prove that he had a dangerous weapon.

The Supreme Court has held that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected is "a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 143-144 (2012).   The Supreme Court has made clear, however, that "a defendant has no right to be offered a plea . . . nor a federal right that the judge accept it." (citations omitted) *Frye*, 566 U.S. at 148-49.   On the other hand, "[t]he fact that [a defendant] is guilty does not mean he was not entitled by the Sixth Amendment to effective assistance or that he suffered no prejudice from his attorney's deficient performance during plea bargaining." *Lafler*, 566 U.S. at 169.

In *Lafler*, the parties conceded that Lafler's counsel was deficient when he advised Lafler to reject the plea offer, but they disagreed as to whether Lafler was prejudiced by the advice.   The Supreme Court, therefore, specifically considered the *Strickland* prejudice prong when the plea offer is rejected on the deficient advice of counsel:

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.  If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

*Lafler*, 566 U.S. at 168.   Under this holding, a petitioner is required to prove that he was prejudiced by showing that "the outcome of the plea process would have been different with competent advice." *Id*. at 163.

In further summarizing the application of *Strickland*, the Court explained that a petitioner must prove "that but for the ineffective advice of counsel there is a reasonable probability that the

2e

plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. at 163-64.

As indicated above, Phillips has failed to provide any proof, and the record contains none, that a plea offer was made by the State.  Phillips does not indicate that any such offer included a plea to a lesser charge, only that he would have received a 20-year sentence.  While this is less than he ultimately received, he has not established that the state trial court would have accepted the plea as allegedly offered.  In fact, the state trial court made no indication that it would have accepted a plea offer when it denied Phillips claim on post-conviction review.  Establishing this component is a critical factor in establishing prejudice under *Frye* and *Lafler*.

Likewise, there is no proof that Phillips counsel advised him to reject a plea offer that otherwise would have benefited him.  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross*, 694 F.2d at 1011 (citing *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971)); *Schlang v. Heard*, 691 F.2d 796 (5th Cir. 1982).  Phillip's self-serving allegations and unsupported, conclusory arguments do not establish that his criminal proceeding would have ended in a more favorable manner but for counsel's advice.  *Adams v. Cooley*, No. 15-6207, 2017 WL 2729568, at *14 (E.D. La. Feb. 1, 2017) (petitioner's claim regarding counsel's advice was not evidence proving his counsel performed deficiently).

Nevertheless, even if the Court were to assume for purposes of this decision that Phillips's counsel advised him to reject the alleged plea offer, Phillips has not shown a reasonable probability that, at that time, he would have accepted the deal "but for the ineffective advice of counsel." *Lafler*, 566 U.S. at 163-64.  Significantly, Phillips has not clearly stated that he would have accepted the alleged plea offer and professed his guilt as required for relief under *Frye*.  Instead, Phillips simply claims that, in hindsight, his counsel was overconfident that the State could not prove that the toy gun was a dangerous weapon.

However, the Supreme Court in *Lafler* noted that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."  *Lafler*, 566 U.S. at 174.  Moreover, bad advice alone generally is insufficient to establish a *Lafler* violation.  *Wilson v. Addison*, 577 F. App'x 782, 786 (10th Cir. 2014); *United States v. Patterson*, 525 F. App'x 681, 685 (10th Cir. 2013).  As the *Lafler* court made clear, the *Strickland* prejudice prong must be considered even when the advice is deficient performance.  In this case, Phillips has not established the actual prejudice necessary under *Lafler*.

Having failed to do so, Phillips has not shown that the state courts' denial of relief on this issue was contrary to or an unreasonable application of *Strickland*.  He is not entitled to relief on this claim.

### 2.  **Defense Theory**

Phillips suggests that his counsel was deficient in pursuing a defense theory of simple robbery and attempted simple robbery rather than first degree robbery and attempted first degree robbery.  Phillips claims that, because of the toy B.B. gun, first degree robbery included an element where the perpetrator led the victim to believe he was armed with a dangerous weapon.

The trial transcripts reflect that Phillips's counsel consistently argued to the jury that the State would be unable to prove that the toy B.B. gun was a dangerous weapon.  In closing argument, his counsel urged the jury to reach this conclusion based on the State's failure to prove that Phillips used the gun in a manner that would have made it a dangerous weapon or that a highly charged environment existed during the alleged robberies.[32]  His counsel pointed out to the jury that armed robbery and first degree robbery both required a finding that the toy gun was a dangerous weapon.  As such, he argued to the jury that, because the weapon was not dangerous under the law, the only reasonable verdict would have been simple robbery and attempted simple robbery.[33]  The jury obviously resolved that the weapon was dangerous in reaching its verdict.

The *Strickland* doctrine has established that hindsight is not the proper perspective for judging the competence of counsel's trial decisions.  *Strickland*, 466 U.S. at 689.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689 (citations omitted).  Thus, the fact that a defense theory was not successful does not alone render counsel's performance deficient or prejudicial.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

In this case, Phillips's counsel presented a defense to the charges that was more than reasonable under the circumstances of the case.  The State's evidence included the toy weapon used by Phillips against both victims and compelling testimony and video of the robberies.  His

---

[32]St. Rec. Vol. 6 of 7, Trial Transcript, p. 69-71, 6/27/12.

[33]*Id.* at 71.

counsel was well within reason to present a defense designed to convince the jury to find that Phillips actions only met the least of the responsive offenses.  Phillips has provided nothing to undermine the deference due his counsel's trial strategy or that due the denial of relief by the state courts.

Finally, Phillips makes an off-hand comment during his discussion of this claim that he would not have hired his attorney had he known that counsel was a district attorney in Orleans Parish.  The state trial court found the claim speculative, because there was no proof in the record that Phillips's counsel held that position nor did Phillips indicate how this rendered his counsel ineffective.   Phillips has provided nothing more to this Court to establish a claim under *Strickland*.[34]

As the state trial court indicated, it is well settled that conclusory allegations of ineffective assistance of counsel, with no showing of deficient performance or effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *See Miller*, 200 F.3d at 282 (citing *Ross*, 694 F.2d at 1012).  Phillips has made no such allegations against his counsel in this regard.  He also has shown no error in the state courts' ruling on this point.

For these reasons, the state court's denial of relief was not contrary to or an unreasonable application of *Strickland*.  Phillips's is not entitled to relief.

**VI.**     **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Phillips's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[34]The Court's research did not locate any information in the public domain to reflect that Phillips's attorney was an Orleans Parish assistant district attorney at or around the time of his criminal case.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[35]

New Orleans, Louisiana, this 1st day of April, 2019.

_____

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[35]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.